**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis E. Martinez, et al., | No. CV-14-00299-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Ehrenberg Fire District, | |
| Defendant. | |

Defendant has filed a motion for summary judgment and Plaintiffs have filed a cross-motion for partial summary judgment. Docs. 39, 41. Both motions are fully briefed, and the Court held oral argument on June 5, 2015. The Court will deny Defendant's motion and grant Plaintiffs' motion.

**I.   Background.**

The underlying facts in this case are largely undisputed. Plaintiffs are Luis Martinez and Rafael Martinez, Jr., former "volunteer firefighters" for Defendant Ehrenberg Fire District ("EFD"). Rafael and Luis began working as EFD firefighters in January 2011 and February 2012, respectively. Both were terminated in November 2013 by Fire Chief Erick Felix.

EFD was established in 1979 and has one station. Doc. 39 at 2. Although it employs a full-time fire chief, lieutenant, and administrator, volunteer firefighters have comprised a majority of its force since its inception. Doc. 40, ¶¶ 1, 2. At any given time,

the force is made up of 13 to 17 volunteer firefighters. Doc. 42, ¶ 2. The full-time employees receive health insurance coverage as well as an annual salary ranging from $28,000-$55,000, depending on job title. *Id.*, ¶¶ 21, 28, 30. The firefighters are paid for their work as follows: $50 flat-rate for a 24-hour shift, $25 flat-rate for a half-shift, and $10 to $15 per hour while responding to calls during their shifts. *Id.*, ¶¶ 9-12. Firefighters receive $10 per hour for training and sometimes receive other stipends for travel. *Id.*, ¶¶ 13-14. They also receive worker's compensation insurance coverage. No other benefits are provided.

Firefighters apply by filling out an "Application for Employment" and must pass a physical. *Id.*, ¶¶ 4, 6. They must also fill out and submit a W-4, I-9, and other forms, which are kept in their personnel files. *Id.*, ¶ 62. The fire chief maintains a monthly shift schedule based on availability of each firefighter. *Id.*, ¶ 34. Although there appears to be no minimum hourly requirement per week, a firefighter may work a maximum of four shifts per week. Doc. 39 at 2. During their shifts, firefighters are required to remain at or close to the station. Doc. 42, ¶ 36. The fire chief and lieutenant discipline firefighters for tardiness, unpreparedness, and other reasons. *Id.*, ¶ 41.

After beginning work in February 2012, Luis worked approximately 1,500 hours the remainder of the year. *Id.*, ¶ 52. In 2013, Luis worked approximately 2,400 hours before his termination in November. *Id.*, ¶ 54. From April 2012 to June 2012, Luis also worked full-time at an auto-body shop. Doc. 40, ¶ 25. In March 2013, he began working at Phoenix International Raceway, and later began working full-time at K-Mart. *Id.* In 2012, Rafael worked over 3,000 hours for EFD. Doc. 42, ¶ 57.

In November 2013, EFD terminated Luis for failing to appear for shifts and inappropriate behavior, and terminated Rafael for tardiness, insubordination, and inappropriate behavior. Doc. 40, ¶¶ 41, 42. On February 17, 2014, Plaintiffs filed this lawsuit against EFD alleging five counts: (1) failure to pay minimum wage in violation of the Arizona Minimum Wage Act ("AMWA"), (2) failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"), (3) failure to pay overtime under the

FLSA, (4) retaliation in violation of the AMWA, and (5) retaliation in violation of the FLSA. Doc. 1. Both sides move for summary judgment on whether Plaintiffs are "employees" under the FLSA and the AMWA. Defendant also seeks summary judgment that the overtime provisions of the FLSA do not apply to EFD.

## II.    Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When presented with cross-motions for summary judgment, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## III.   Analysis.

The FLSA requires employers to pay minimum wage and specific overtime rates to their employees. 29 U.S.C. §§ 206, 207. The AMWA, which looks to the standards of the FLSA to determine whether an individual is an employee, A.R.S. § 23-362(D), also requires employers to pay "employees no less than the minimum wage[.]" A.R.S. § 23-363(A). The FLSA (and therefore the AMWA) do not apply to an "individual who volunteers to perform services for a public agency." 29 U.S.C. § 203(e)(4)(A). The central issue in this case is whether Plaintiffs were "employees" of EFD under either statute. If not, all of Plaintiffs' claims fail.

Whether an individual is an "employee" under the FLSA is a question of law. *See Purdham v. Fairfax Cnty. School Bd.*, 637 F.3d 421, 427 (4th Cir. 2011). Plaintiffs bear the initial burden of proving that an employer-employee relationship existed and that their activities constituted employment for purposes of the Act. *Id.* at 427 (quoting

*Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999)).  Defendant bears the burden of showing that Plaintiffs fall within the volunteer exemption.  *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011).

In applying the FLSA, two principles must be remembered.  First, the FLSA is "construed liberally in favor of employees."  *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005).  Second, FLSA "exemptions are to be narrowly construed against the employers seeking to assert them."  *Cleveland*, 420 F.3d at 988.  Indeed, "[a]n exemption can only apply to persons 'plainly and unmistakably within [its] terms and spirit.'"  *Id.* (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

### A. Are Plaintiffs Employees Under the FLSA and the AMWA?

The Court must determine whether Plaintiffs have met their burden of showing that they are "employees" under the FLSA and, if so, whether Defendant has met its burden of showing that Plaintiffs fall within the "volunteer" exemption in § 203(e)(4)(A).

#### 1. Employer-Employee Relationship.

The FLSA broadly defines "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Employ" means "to suffer or permit to work."  *Id.* § 203(b).  "The Supreme Court has adopted an 'economic reality' test to determine whether an individual is an employee under the FLSA."  *Mendel v. City of Gibraltar*, 727 F.3d 565, 569 (6th Cir. 2013) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).  "[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service."  *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).  In contrast, "[a]n individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit' is outside the sweep of the Act."  *Tony & Susan*, 471 U.S. at 295 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)).  The test is whether the individual works either expressly or impliedly "in contemplation of compensation."  *Id.* at 302, 306; *see also Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) (finding that plaintiff was not an employee

- 4 -

under the FLSA because he "had neither an express nor an implied agreement for compensation" with his employer).

Defendant does not dispute that Plaintiffs received agreed-upon compensation for their work as firefighters. And Plaintiffs present undisputed declarations that, in taking firefighter positions with EFD, they were "primarily motivated by receiving compensation, which was relatively high among the available jobs in the area at that time." Doc. 42-2 at 49, 51.[1] From these undisputed facts, the Court concludes that Plaintiffs plainly were "suffer[ed] or permit[ted] to work" by EFD as stated in § 203(b) of the FLSA, and clearly worked "in contemplation of compensation" as required by the Supreme Court. *Tony & Susan*, 471 U.S. at 302, 306. The Court therefore finds that Plaintiffs have met their burden of establishing an employer-employee relationship under the FLSA. The Court now turns to whether Defendant has shown that Plaintiffs fall within the volunteer exemption of § 203(e)(4)(A).

## 2.     Volunteer Exemption.

The term "volunteer" is not defined in the FLSA, but the Department of Labor ("DOL") has promulgated instructive regulations. 29 C.F.R. § 553.101(a) defines a volunteer as "[a]n individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered[.]" Volunteers may, however, "be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." *Id.* § 553.106(a).

The parties disagree on whether money paid to Plaintiffs qualified as "a nominal fee." The regulations provide this additional guidance:

---

[1] Defendant mischaracterizes Plaintiffs' declarations as stating that they were also motivated by the fact that they enjoy helping others, and provides this as the sole basis for disputing Plaintiffs' assertion that they were motivated by compensation. Doc. 44, ¶¶ 42-43. Each declaration states that "[w]hile I enjoy helping others, *that was not my motivation for working as a firefighter.*" Doc. 42-2 at 49, 51 (emphasis added). Defendant cites no evidence to dispute this assertion. Doc. 44, ¶¶ 42-43.

- 5 -

> A nominal fee is not a substitute for compensation and must not be tied to productivity. However, this does not preclude the payment of a nominal amount on a "per call" or similar basis to volunteer firefighters. The following factors will be among those examined in determining whether a given amount is nominal: The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year. An individual may receive a nominal monthly or annual stipend or fee without losing volunteer status.

*Id.* § 553.106(e). "The regulatory definition of volunteer should be applied 'in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided.'" *Purdham*, 637 F.3d at 428 (quoting *Cleveland v. City of Elmendorf*, 388 F.3d 522, 528 (5th Cir. 2004)).

For several reasons, the Court concludes that Plaintiffs do not qualify as volunteers under this regulatory guidance.

First, Plaintiffs did not perform "hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered[.]" 29 C.F.R. § 553.101(a). There was a promise, expectancy, and receipt of pay for Plaintiffs' work as firefighters, and Defendant has not provided evidence that Plaintiffs worked for civic, charitable, or humanitarian reasons. As already noted, Plaintiffs' declarations state that they worked for compensation, not to help people. Doc. 42-2 at 49, 51.[2]

Second, Plaintiffs were paid in part on an hourly basis. As noted above, they received $10 per hour while on call. The regulations provide that "[a] nominal fee is not

---

[2] The parties disagree on whether Plaintiffs' subjective motives are relevant, and the case law appears unsettled on this issue as well. The regulations, however, clearly direct the Court to consider Plaintiffs' "reasons" for working, 29 C.F.R. § 553.101(a), and the Court therefore finds their declarations relevant. The Court would reach the same conclusion in this case, however, even if Plaintiffs' subjective reasons for working as firefighters were not considered.

- 6 -

a substitute for compensation and must not be tied to productivity." 29 C.F.R. § 553.106(e). DOL Opinion Letters, which both sides cite to interpret the regulations in this case, suggest that hourly wages are substitutes for compensation or are tied to productivity and therefore do not qualify as nominal fees:

> Generally, a key factor in determining if a payment is [a] "substitute for compensation" or "tied to productivity" is "whether the amount of the fee varies as the particular individual spends more or less time engaged in the volunteer activities." If the amount varies, it may be indicative of a substitute for compensation or tied to productivity and therefore not nominal.

Opinion Letter FLSA2006-28 at 3 (Doc. 40-11) (quoting Opinion Letter FLSA2005-51 (Doc. 40-12)) (citation omitted). This guidance clearly applies to hourly pay. As DOL has explained: "to the extent that payments are tied to productivity (*e.g.*, payment of hourly wages for services rendered) . . . there is a greater likelihood that such fees are not nominal." Opinion Letter FLSA2006-28 at 2 (Doc. 40-11); *see also* Opinion Letter FLSA2007-3NA at 3 (Doc. 40-10) (same, characterizing "payment of hourly wages for services rendered" as "payments tied to productivity").

      Third, the circumstances of Plaintiffs' employment do not, under the regulations, suggest that their pay was nominal. The regulations identify several factors to be considered in deciding whether compensation amounts to a nominal fee: "The distance traveled and the time and effort expended by the volunteer; whether the volunteer has agreed to be available around-the-clock or only during certain specified time periods; and whether the volunteer provides services as needed or throughout the year." 29 C.F.R. § 553.106(e). The DOL has explained that these factors reflect the level of "the volunteer's sacrifice" and therefore may shed light on whether money is paid for "sacrifice rather than productivity-based compensation." Opinion Letter FLSA2007-3NA at 3 (Doc. 40-10); *see also* Opinion Letter FLSA2008-15 at 2 (Doc. 41-1 at 2-4) (regulations allow volunteer pay "as long as such payment is consistent with certain factors denoting the relative 'sacrifice' of the volunteer"). These factors do not show

particular sacrifice on the part of Plaintiffs. They did not have to travel great distances to work and were not available around-the-clock for fire calls. Although they did work throughout the year, they did so only on their own schedules. Thus, the substantial compensation they received cannot be said to have been merely reflective of the sacrifice they made as volunteers, making it less likely to be viewed as a nominal fee.

Fourth, Plaintiffs worked more hours than typical volunteers. The DOL has suggested that working at a level of 3,000 hours per year is not consistent with volunteer work. Opinion Letter FLSA2006-28 at 4 (Doc. 40-11) ("it is unlikely that 3,000 hours of service (50+ hours per week) is 'volunteering' rather than employment"). Rafael worked more than 3,000 hours in 2012 and, in the ten months he worked in 2013, Luis worked more than 2,304 hours. Doc. 42, ¶¶ 57-58; Doc. 44; ¶¶ 57-58. This level of work is more consistent with employment than volunteer labor.

The parties spend considerable time addressing a 20% guideline adopted by the DOL for evaluating a volunteer's pay. The guideline suggests that receipt of pay less than 20% of what a fulltime employee would receive for the same service is indicative of volunteer status. The Court concludes, however, that the guideline does not apply. The DOL adopted the guideline in an Opinion Letter concerning a yearly stipend paid to a volunteer high school coach. *See* Opinion Letter FLSA2005-51. The Opinion Letter observed that a "key factor" was whether the amount paid to the coach varied depending on whether the coach spent "more or less time engaged in the volunteer activities." *Id.* at 2. Pay that increased with time spent on the job is more likely to be substitute compensation, the DOL noted. *Id.* The DOL then turned to the 20% guidance and provided this relevant instruction:

> If the stipend is not more than 20 percent of what the district would otherwise pay to hire a coach or advisor for the same services, it would appear to be a permissible "nominal fee." *Such a threshold assumes that . . . the school district simply provides a lump-sum payment or series of payments without regard to . . . hours worked as discussed above*.

*Id.* (emphasis added). In other words, the 20% guideline assumes that the compensation

- 8 -

in question is not based on hours worked; it applies to lump-sum type payments. This makes sense, because whether the 20% threshold is exceeded would be difficult to determine in cases where the pay is based on hours worked. The amount of pay could fluctuate month-to-month and year-to-year, exceeding 20% at some points and not at others. In this case, for example, whether Plaintiffs exceeded the 20% threshold would depend on the fortuity of how many times they were called out during their shifts as firefighters and received $10 per hour. The Court thus concludes that the 20% guideline does not apply, and that the hourly nature of Plaintiffs' on-call pay suggests, for reasons discussed above, that they are not volunteers.[3]

Case law supports the Court's conclusion that Plaintiffs are not volunteers within the meaning of the FLSA. In *Mendel v. City of Gibraltar*, the city "typically had between twenty-five and thirty volunteer firefighters." 727 F.3d at 567. Although they were not required to respond to calls, they received $15 per hour "for the time they [did] spend responding to a call or maintaining equipment." *Id.* Full-time firefighters in the area received $14 to $17 per hour. *Id.* Like Plaintiffs, the firefighters maintained other employment and did not work set shifts. *Id*. They did not staff a fire station. *Id.* They received an IRS Form-1099 MISC from the city (Plaintiffs received Form W-2 like regular employees) and, like Plaintiffs, did not receive benefits such as health insurance. *Id.* at 568.

The court first concluded that the firefighters fell "within the FLSA's broad definition of employee" because they "are suffered or permitted to work . . . and they even receive substantial wages for their work." *Id.* at 570. The court then addressed whether the firefighters fell within the volunteer exemption under § 203(e)(4)(A) – "whether the wages paid to the firefighters constitute 'compensation' or merely a 'nominal fee.'" *Id.* After consulting the DOL regulations, the court concluded that "[i]n the context of the economic realities of this particular situation," the wages were

---

[3] Given the other factors identified in this order, the Court would find that Plaintiffs are not volunteers even if the 20% guideline applied and Plaintiffs fell below it.

- 9 -

1  compensation under the FLSA because the firefighters "render[ed] services with the
2  promise, expectation, and receipt of substantial compensation." *Id.* at 571.  It further
3  noted that the firefighters knew they would receive an hourly rate for each call they
4  responded to, "which happens to be substantially similar to the hourly rates paid to full-
5  time employed firefighters in some of the neighboring areas." *Id.*

6  *Rodriguez v. Township of Holiday Lakes*, 866 F. Supp. 1012, 1015 (S.D. Tex.
7  1994), addressed whether an unpaid patrol officer was an employee of a city police
8  department under the FLSA.  The defendant police department relied on unpaid, full-time
9  patrol officers to comprise its force.  *Id.*  This allowed the same officers to be eligible for
10  work as road-construction flagman in a neighboring county.  *Id.*  When the county
11  required that "flagmen be paid, full-time police officers," the defendant began paying the
12  officers $5 per month.  *Id.*  The court found that the plaintiff was not a volunteer under
13  the FLSA for several reasons: his motivation for working as a police officer was not
14  based on civic responsibility; he filled out an employment application; he was subject to
15  the employer's policy manual, which stated that an employee could be asked to give up
16  outside employment that interfered with the individual's work for the police department;
17  and the ordinance creating the police department seemingly did not contemplate
18  "volunteer status" of its officers.  *Id.* at 1020.

19  Plaintiffs' situation presents a stronger case for employee status than either
20  *Mendel* or *Rodriguez*.  In addition to the four factors discussed above suggesting that they
21  are employees under the DOL regulations, Plaintiffs submitted evidence from the Bureau
22  of Labor Statistics indicating that the mean compensation for firefighters in the same
23  geographic region (La Paz County, AZ) was approximately $13 per hour from 2011 to
24  2013.  The Court takes judicial notice of this data.  *See United States v. Orozco-Acosta*,
25  607 F.3d 1156, 1164 n.5 (9th Cir. 2010) (taking judicial notice of government-compiled
26  statistics).  Plaintiffs received $50 for each 24-hour shift, $25 for each half-shift, and $10
27  per hour while responding to a call.  Like *Mendel* and *Rodriguez*, the compensation
28  received for responding to a call was substantially similar to the prevailing rate for

firefighters in La Paz County.  Plaintiffs knew that when they responded to a call they would be paid at a rate close to that of a full-time firefighter, and both assert that they chose to work for EFD because the wages were substantial compared to other jobs in the county.  *See* Doc. 42-2 at 49, ¶ 3; Doc. 42-2 at 51, ¶ 3.  Plaintiffs were not paid on a "per call" basis, *see* 29 C.F.R. § 553.106(e), and the fact that they received substantially lower compensation for their down time at the station is not conclusive of volunteer status.  Remaining at the station provided Plaintiffs the opportunity to respond to calls, during which they made a substantial wage.  As the defendants did in *Mendel* and *Rodriguez*, EFD treats each firefighter like an employee by requiring an employment application, maintaining a personnel file, and disciplining firefighters if they do not show up for scheduled shifts.

The Court is not persuaded by Defendant's other arguments.  The fact that Plaintiffs received few benefits does not distinguish them from the employees in *Mendel* and *Rodriguez*.  The fact that Plaintiffs could make their own schedules does not mean they were volunteers; some employers permit employees to set their own schedules.  Plaintiffs' decision to work other jobs while employed at EFD is not indicative of volunteer status; many persons work two jobs.  Finally, the fact that Plaintiffs signed documents stating that they were volunteers is not controlling.  As Plaintiffs have noted, many of Defendant's other documents referred to them as employees, and "the law requires more than simply labeling workers as volunteers to qualify for volunteer status under the FLSA."  *Cleveland*, 388 F.3d at 527.

Considering the liberal intent of the FLSA, the narrow construction that must be applied to FLSA exceptions, the implementing regulations and DOL Opinion Letters, analogous case law, and the economic realities of Plaintiffs' work for EFD, the Court finds that Plaintiffs do not fall within the volunteer exemption.  Plaintiffs are entitled to summary judgment on this issue.

**B.     Does Section 213(b)(20) Apply?**

Even if Plaintiffs are employees, Defendants argue that they cannot recover

overtime because the FLSA's overtime requirements do not apply to "any employee of a public agency who in any workweek is employed in fire protection activities . . . if the public agency employs during the workweek less than 5 employees in fire protection . . . activities[.]"  29 U.S.C. § 213(b)(20).  It is undisputed that Plaintiffs engaged in fire protection activities.

The Court cannot grant summary judgment for either party on this issue.  It is undisputed that, in addition to Plaintiffs, EFD had two other employees in fire protection activities – the fire chief and lieutenant.  Although EFD also had several other firefighters at any given time, the Court cannot conclude on the evidence presented that those other firefighters were or were not employees as a matter of undisputed fact and law.  The Court therefore cannot determine as a matter of summary judgment whether EFD satisfied the five-employee requirement for overtime pay.

**IT IS ORDERED:**

1. Plaintiffs' motion for partial summary judgment (Doc. 41) is **granted**.
2. Defendant's motion for summary judgment (Doc. 39) is **denied**.
3. The Court will set a final pretrial conference by separate order.

Dated this 8th day of June, 2015.

David G. Campbell
United States District Judge